## Case No. 16,400.

### UNITED STATES v. STEWART.

[Crabbe, 265.] [1]

District Court, E. D. Pennsylvania. May, 1839.

#### NAVY—ENLISTMENT OF MINORS.

[Cited in Re McNulty, Case No. 8,917, to the point that minors might be enlisted in the navy, but not in the army, without the consent of their parents or guardians.]

This was a habeas corpus, addressed to Commodore [Charles] Stewart, as commanding the navy yard at Philadelphia, requiring him to produce the body of Bishop Priest, alias Lewis Johnson, alleged to be a minor improperly enlisted in the navy. The proof of minority wholly failed, and the petitioner was remanded.

In connexion with the case, Judge HOPKINSON prepared the following summary of cases, on the question of the enlistment of a minor in the navy:

The question came before the circuit court of the United States for the First circuit, in 1816. U. S. v. Bainbridge [Case No. 14,-497]. One Robert Treadwell, an infant of the age of twenty years and about eleven months, born on the 2d August, 1795, enlisted in the navy, to serve two years, in May, 1815. He had deserted, was brought to trial before a court martial, in June, 1815, and was sentenced to serve in the navy for two years from the 19th June, and to forfeit the wages then due him. He had a

[1] [Reported by William H. Crabbe, Esq.]

father living, then absent at sea, and it appeared that the enlistment had been without the father's consent. It was contended for him: (1) That congress had no power to pass an act authorizing the enlistment of minors without the consent of their father; (2) that congress had passed no act authorizing such enlistment; (3) that it was not a contract for the benefit of the infant. The other side took these grounds: (1) That the contract, as made by the minor, was a valid one; (2) that if he might, at any time, have avoided it, he could not do so after he had been legally sentenced by a court martial; (3) that the acts of congress, for enlistments in the navy, make continual and particular mention of "boys," who are required by the nature of the service. Story, Circuit Justice, delivered the opinion of the court. He stated the first question to be, whether the contract of enlistment, supposing it to have been made without the consent of the father, was void or not. By the common law, the father has a right to the custody of his children during their infancy. He is also entitled to the benefit of their labor, while they live with him, and are maintained by him. These rights, however, depend upon the mere municipal rules of the state, and may be enlarged, restrained, or limited, as the wisdom or policy of the times may dictate, unless the legislative power be controlled by some constitutional prohibition. The constitution of the United States gives congress the power "to raise and support armies," and "to provide and maintain a navy," and "to make all laws which shall be necessary and proper" to execute these powers. The services of minors may be useful and important to the country, both in the army and navy. In the navy, the employment of minors is almost indispensable. Congress, therefore, have the power to enlist minors in the naval service, and the exercise of the power is justified by the soundest principles of national policy. They need not require the consent of the parents; such an assertion is extraordinary; it assumes that the legislative power cannot be exercised in derogation of the common law. Minors are enrolled in the militia, to perform military duty; and in the British navy minors are not only enlisted without the consent of their parents, but employed against their own consent. Do the laws of the United States authorize the enlistment of minors into the navy? All the acts authorize the employment of midshipmen, who are invariably minors. All the acts since June, 1798, authorize the president to engage "boys," in the ordinary duties of the navy. In no one of the laws is the consent of the parents or guardians required. The laws manifestly contemplate that it is a personal contract made by the infants themselves, for their own benefit. They are entitled to the pay, bounty, and prize-money. As to the case of a voidable contract made by an

infant, at common law, it is meant that the contract is voidable by the infant, at his own election, and not by the assent or dissent of the parents. The acts of congress could not intend to authorize an infant to enlist in the navy, and yet to avoid the contract at his election. "Upon the whole, as congress have authorized 'boys' to be engaged in the service of the navy, without requiring the previous consent of their parents to the contract of enlistment, that contract, when fairly made with an infant of reasonable discretion, must be deemed to have a semblance of benefit to him, and to be essential to the public welfare, and, therefore, binding to all intents and purposes." The acts respecting enlistments in the army provided "that no person, under the age of twenty-one years, shall be enlisted by any officer, or held in the service of the United States, without the consent of his parents, guardian, or master, first had and obtained, if any he have." Afterwards, in January, 1813, the enlistment of minors, over eighteen years of age, was expressly authorized; and the proviso which required the consent of the parents, &c., repealed in December, 1814. Story's Laws, 1285, 1433 [2 Stat. 791; 3 Stat. 146].

The case of Emanuel Roberts, 2 Hall, Law J. 192, before Nicholson, C. J., Baltimore county, 1809: The constitution gives to congress the power of raising and maintaining a navy; the petitioner enlisted in the service of the United States; it is, therefore, a proceeding under the authority of the United States. It is alleged that the party is only sixteen years of age, and was drunk when he enlisted. The court recognises the contract of enlistment as a contract or agreement in which the United States was one party, and the petitioner the other. In the extreme case of a child eight or ten years of age, the court would discharge him, because of his incapacity to make a contract; not an incapacity arising from the general principle that he who has not attained the age of twenty-one years is incapable of binding himself, but from an actual imbecility of mind, owing to his tender years. The petitioner is not of this description. If he be only sixteen years of age, he is remarkably well grown. "Although it is a general rule that a person under twenty-one years of age cannot bind himself by contract, yet I am far from saying that this rule will apply in its unlimited extent, to prevent young men from enlisting in the service of their country, or to authorize their discharge upon an application to the courts of the United States." He was of opinion that the court had no right to interfere in the case.

Com. v. Gamble, 11 Serg. & R. 93, before the supreme court of Pennsylvania, in 1824: Gibson, C. J. "The single question to be decided is, whether the enlistment of a minor, into the corps of marines, is void by any act of congress, or at common law. The act which regulates enlistments in the army, prohibits the enlistment of minors, except as musicians; and, on the other hand, the act which regulates the enlistment of seamen, expressly authorizes the enlistment of minors." The marine corps has no necessary connexion with the army; it is a part of the naval establishment, and is exclusively subject to the orders of the secretary of the navy. He thinks that the contract of enlistment in the navy, by a minor, is good, independently of the statutes, at common law. Such a contract is good, if for the benefit of the minor, and he is far from being convinced that the contract of enlistment is not of this kind. He puts the case on the ground of public policy, which requires that a minor be at liberty to enter into a contract to serve the state, whenever such contract is not forbidden by the state itself. This is the common law of England. The petitioner was in confinement, on a charge of desertion. The chief justice said: "The law is clear, that he must abide the sentence of a court martial, before he can contest the validity of his enlistment." Prisoner remanded.

Com. v. Murray, 4 Bin. 487, in 1812: The syllabus of the case is: "Under the act of congress of January 31, 1809 (2 Story's Laws, 1109 [2 Stat. 514]), authorizing the president of the United States to cause to be engaged certain able seamen, ordinary seamen, and boys, to serve in the navy, an infant who has arrived at years of discretion, and has neither father, master, nor guardian, may make a valid contract to serve according to the act, notwithstanding he has a mother with whom he resides at the time, and whose consent was not given to the contract." "An infant owes reverence and respect to his mother, but she has no legal authority over him, nor any legal right to his services." "Under the constitutional power of congress to provide and maintain a navy, that body may by law authorize minors to enter into contracts for service in the navy, notwithstanding such contracts if made by an infant might not be binding upon him at common law." The opinion of Tilghman, C. J., cites section 8, art. 1, of the constitution, giving congress power to raise and support armies, and to provide and maintain a navy; this includes all powers necessary to the object intended. The service of persons, under twenty-one years of age, is useful to the country and to themselves. Certainly infants, not under the control of any other person, may make such a valid contract. He gives no opinion whether infants may not engage themselves in the navy, without the consent of parents, master, or guardian. In this case there was no father, master, or guardian, and the mother had no legal rights. The petitioner was of an age fully to comprehend the nature of the engagement, and there was no person who had any lawful authority over him. Yeates, J.: It has not been contended that an infant under the

years of discretion, or one whose services have been engaged by a personal contract, can lawfully engage in the navy. The petitioner was seventeen years and seven months old. His father was dead; his mother had no legal rights; there was no prior contract; and the court presumes this contract which he has made is for his benefit. Brackenridge, J., goes on the ground that the contract is for the benefit of the infant. He had neither father nor guardian, nor any means of living, except the trade of a shoemaker, which his health did not permit him to pursue. All idea of the act of congress is excluded. The judge will not touch it, as it has nothing to do with the case; he can give no authority to the other contracting party. Congress cannot change the principles of the common law; the legislature of a state, alone, may do it.